No. 15-1919
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT**
_____

**W.T. DAVIS, INDIVIDUALLY AND ON BEHALF OF A CLASS OF TAXPAYERS OF GARLAND COUNTY, ARKANSAS, SIMILARLY SITUATED, AND; GARLAND COUNTY CHAPTER OF THE N.A.A.C.P.**

**PLAINTIFFS - APPELLEES**

**V.**

**HOT SPRINGS SCHOOL DISTRICT; ARKANSAS, STATE OF; ARKANSAS STATE BOARD OF EDUCATION**

**DEFENDANTS - APPELLEES**

**CUTTER MORNING STAR SCHOOL DISTRICT; FOUNTAIN LAKE SCHOOL DISTRICT; JESSIEVILLE SCHOOL DISTRICT; LAKE HAMILTON SCHOOL DISTRICT; LAKESIDE SCHOOL DISTRICT; MOUNTAIN PINE SCHOOL DISTRICT**

**DEFENDANTS – APPELLANTS**
_____

On Appeal From
The United States District Court for the Western District of Arkansas
The Honorable Robert T. Dawson
_____

**ADDENDUM**
_____

Jess Askew III
Jess.Askew@kutakrock.com
Ashley W. Hudson
Ashley.Hudson@kutakrock.com
KUTAK ROCK LLP
124 West Capitol Avenue, Suite 2000
Little Rock, Arkansas 72201
Telephone: (501) 975-3000
Facsimile: (501) 975-3001

AND

D. Scott Hickam
D. Scott Hickam, P.A.
211 Hobson Avenue, Suite C
Hot Springs, AR 72913
dscotthickam@sbcglobal.net

*Counsel for Appellants*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

W.T. DAVIS, *et al.*                                    PLAINTIFFS


v.                         Case No. 89-CV-06088


HOT SPRINGS SCHOOL DISTRICT, *et al.*                  DEFENDANTS


AARON GORDON, *et al.*                                 INTERVENORS


## MEMORANDUM OPINION AND ORDER

Currently before the Court are a Motion for Relief from Judgment (Doc. 174) and Brief in Support (Doc. 175) filed by six Separate Defendant school districts: Cutter Morning Star School District, Fountain Lake School District, Jessieville School District, Lake Hamilton School District, Lakeside School District, and Mountain Pine School District ("Movants"); a Response (Doc. 177) filed by Separate Defendants the State of Arkansas, the Arkansas State Board of Education, and the Commissioner of Education; a Response in Opposition (Doc. 178) and Brief (Doc. 179) filed by Separate Defendant Hot Springs School District; and a Response in Opposition (Doc. 183) and Brief (Doc. 184) filed by Plaintiffs.[1]  The Court held a hearing on March 27, 2015, to permit the parties to present their

---

[1] Throughout this Order, references to "Plaintiffs" includes all Plaintiffs and Intervening Plaintiffs.

arguments in connection with the Motion. All parties were represented by counsel in open court.

This matter originated as a class action lawsuit filed in this Court on August 18, 1989, alleging that Garland County maintained a racially segregated public school system in violation of the Fourteenth Amendment and 42 U.S.C. §§ 1981–1983. (Doc. 1). Two years later, on November 25, 1991, the parties entered into the Garland County School Desegregation Case Comprehensive Settlement Agreement (the "Agreement"). The Agreement included a provision whereby the parties would implement the Arkansas School Choice Act of 1989, Ark. Code Ann. § 6-18-206 (repealed 2013). The 1989 Act established a public school choice program that allowed students to apply to attend a school outside their resident district, but included a race-based limitation on such transfers. After a fairness hearing, the Court entered an order (Doc. 82) on April 28, 1992[2] approving the Agreement and dismissing the case with prejudice on the merits.

On May 22, 2013, Movants filed a petition for declaratory relief following the Arkansas legislature's repeal of the 1989 Act with the Arkansas Public School Choice Act of 2013.[3] The

_____

[2] The order approving the Agreement and dismissing the case was signed by Judge Waters on April 28, 1992 and filed on the record on May 1, 1992.

[3] The repeal of the 1989 Act followed this Court's June 12, 2012 decision in *Teague v. Arkansas Board of Education*, 873 F. Supp. 2d 1055 (W.D. Ark. 2012),

2013 Act removed the race-based limitation on public school choice transfers and included a provision that the receiving district shall not discriminate on the basis of gender, national origin, race, ethnicity, religion, or disability.  However, it only permitted nonresident transfers "provided that the transfer by the student does not conflict with an enforceable judicial decree or court order remedying the effects of past racial segregation in the school district."  Ark. Code Ann. § 6-18-1901(b)(3).

In the 2013 petition, Movants argued that "the import [of entering the settlement agreement and obtaining Court approval thereof] was to incorporate by reference the language, terms and provisions of the 1989 Act as a consent desegregation plan of the Court applicable to all public school districts within Garland County, Arkansas, for the purpose of remedy [sic] the vestiges of prior *de jure* racial segregation within the public education system of Garland County, Arkansas."  (Doc. 161, p. 6).  They also argued that neither the judicial decision nor the 2013 Act has any impact on the efficacy of the Court's 1992 Order.  The Court agreed and granted Movants the requested declaratory relief on June 10, 2013, finding that "the

*vacated sub nom. Teague v. Cooper,* 720 F.3d 973 (8th Cir. 2013),  which held that the race-based transfer limitation in the 1989 Act violated the Equal Protection Clause of the Fourteenth Amendment.  The District Court's decision was rendered moot by the Eighth Circuit following the passage of the School Choice Act of 2013.

Settlement Agreement constitutes a court-approved desegregation plan that should remain in effect despite recent changes to the law on which the Settlement Agreement was partly based." (Doc. 168, p. 4).

On August 25, 2014, the same Movants then filed the instant Motion for Relief from Judgment under Federal Rule of Civil Procedure 60(b)(5), seeking termination of the Agreement and relief from the Court's 1992 Order in its entirety on grounds that it is no longer just or equitable to give the 1992 Order or the Agreement prospective application in light of the repeal of the 1989 Act.

"Federal Rule of Civil Procedure 60(b)(5) permits a party to obtain relief from a judgment or order if, among other things, 'applying [the judgment or order] prospectively is no longer equitable.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)). Under this Rule, "a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Id.*

Although the Court's 1992 Order terminated the case and reflected that the parties could only petition to reopen the case for the purpose of enforcement of the Agreement, "[a] court of equity always retains discretion to modify an injunction,

Appellate Case: 15-1919   Page: 5   Date Filed: 06/25/2015 Entry ID: 4288614

including a consent decree, 'when changed factual conditions make compliance with the decree substantially more onerous . . . when a decree proves to be unworkable because of unforeseen obstacles . . . or when enforcement would be detrimental to the public interest.'" *Smith v. Bd. of Educ. of Palestine-Wheatley Sch. Dist.*, 769 F.3d 566, 572 (8th Cir. 2014) (quoting *Rufo*, 502 U.S. at 391). "*Rufo* and its progeny grant federal courts of equity substantial flexibility to adapt their decrees to changes in the facts or law, particularly in institutional reform litigation, where the public interest is paramount." *Id.*

Movants have made clear in their filings and at the hearing that they are not seeking a modification of the Agreement. Rather, they seek to "terminate finally the 1992 Order, and relieve the parties of their obligations under the Settlement Agreement." (Doc. 175, p. 23).[4]

Courts may "relinquish continuing jurisdiction to ensure compliance with a desegregation consent decree when the moving party has demonstrated full compliance." *Smith*, 769 F.3d at 572. The "core of the termination standard" is "whether the vestiges of past discrimination ha[ve] been eliminated to the extent practicable." *Id.*

---

[4] At the hearing, Movants' Counsel expressed his belief that relief from the Court's 2013 Order providing declaratory relief was not necessary or particularly relevant to the pending Motion for Relief.

After consideration of the record and arguments presented, the Court finds that Movants have not established that termination of the Agreement and relief from the 1992 Order is warranted. Movants assert that they have fully complied with the Agreement and the Court's 1992 Order. However, an assertion of compliance does not justify the remedy of termination. Movants have not submitted any evidence to demonstrate full compliance with the Agreement, nor have they offered any proof that the vestiges of past discrimination have been eliminated.[5] Accordingly, Movants have not met the standard for termination of a desegregation decree under *Smith*.

Although Movants argue that continued application of the Agreement would be unjust, the only example provided is the situation of one Garland County resident whose children's public school choice applications were denied by Mountain Pine School District in 2014 under the 1989 Act. The Court cannot conclude that this single example justifies the termination of a settlement agreement that has been in place for decades.

For the reasons set out above, the Motion for Relief from Judgment (Doc. 174) filed by Separate Defendants Cutter Morning Star School District, Fountain Lake School District, Jessieville

---

[5] Also, Defendant Hot Springs School District has provided evidence that the Garland County school districts remain racially identifiable. These documents include comparison tables that present Garland County School Districts' enrollment by race for school years 2004-05, 2010-11, 2011-12, 2012-13, and 2013-14 (Doc. 179-1) and the Arkansas Department of Education's Public School Choice Act of 2013 Net/Gain Loss Report (Doc. 179-2).

School District, Lake Hamilton School District, Lakeside School District, and Mountain Pine School District is **DENIED.**

Furthermore, the Motion for Relief from Making a Personal Appearance (Doc. 192) filed by Plaintiffs' Counsel is **DENIED AS MOOT.**

IT IS SO ORDERED this 31st day of March, 2015.

/s/ Robert T. Dawson
Honorable Robert T. Dawson
United States District Judge

ADD 7

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION


W.T. DAVIS, ET AL.                                    PLAINTIFFS

VS.                          NO. 89-6088

HOT SPRINGS SCHOOL DISTRICT, ET AL.                   DEFENDANTS

## ORDER AND MEMORANDUM

### Introduction

This action was commenced on August 18, 1989. After a
period of discovery and settlement negotiations, the parties
entered into the Comprehensive Garland County School
Desegregation Settlement (the Settlement Agreement) on
November 25, 1991. The Agreement was filed with the court on
November 25, 1991 and the Court, on February 3, 1992, issued
its order scheduling a fairness hearing to consider the
agreement.

The parties caused notice of the hearing to be published
in the Hot Springs Sentinel Record on February 16, 1992. The
notice summarized the essential terms of the settlement
agreement. Thereafter, the fairness hearing was conducted on
March 30, 1992.

### Findings of Fact

1.    The fairness hearing was appropriately noticed and
reasonable opportunity for objections to be filed and heard was
provided.

2.    The notice of the hearing drew but a single written
response, which response, while not necessarily posed as an
objection, nevertheless was addressed by the parties and
considered by the Court.

3.    No persuasive objections were made to the Settlement
Agreement or presented to the Court.

4.    The Court has considered the Settlement Agreement in
its entirety, the oral and written presentations of the
parties, a reaction to the Settlement Agreement filed March 13,
1992 and the comments of those who appeared at the fairness
hearing.    Based upon all the foregoing, the Court finds that
the Settlement Agreement is fair and reasonable, that it
affords appropriate relief to the plaintiff class and that it
is hereby approved as written and submitted by the parties.

5.    The Court has considered the Release proposed by the
parties, finds it to be fair, reasonable and appropriate,
directs that the parties enter into it and that a fully signed
copy be filed with the Clerk.

6.    The court has considered the attorneys fee to be paid
to counsel for the plaintiff class, finds it to be fair and
reasonable under all of the circumstances of this case, and
approves its payment as outlined in the Settlement Agreement.

### Conclusions of Law

1.    The United States Court of Appeals for the Eighth
Circuit has squarely addressed the standards applicable to a

2

district court's consideration of a proposed settlement
agreement in a desegregation case. "A strong public policy
favors agreements, and courts should approach them with a
presumption in their favor." Little Rock School District v.
Pulaski County Special School District, et al., 921 F.2d 1371
at 1383, 1388 (8th Cir. 1990). Nothing has been presented to
this court to vitiate this presumption of constitutionality and
appropriateness outlined by the Court of Appeals.

2.     All parties with a direct stake in the outcome of
this litigation have been represented and have been heard by
the court and are bound not only by the terms of the agreement
but by the dismissal of this action.

3.     The Court has previously entered its order finding
that the plaintiff class and counsel are appropriate
representatives of those for whom relief was sought in this
action.  While there was no appeal from that order and those
findings, the Court nevertheless reconfirms the vitality of
that order for purposes of this agreement.

4.     The plaintiff class as approved has agreed to release
the districts and the State from all liability for issues which
have been raised in this litigation and has committed there
will be no further litigation among or between the parties
other than proceedings necessary, if any, to enforce the terms
of this Agreement.

3

6.   Accordingly, this action should be dismissed with
prejudice on the merits but without prejudice to any of the
parties to petition this court to reopen this case solely to
enforce the terms of the Settlement Agreement.

7.   In all other respects, dismissal of this action
represents a final order terminating these proceedings and
extinguishing all claims which have been raised or which could
have been raised in this action.

### Conclusion

For all of the foregoing reasons, and subject to the
provisions above described, this action is hereby dismissed
with prejudice, each party to bear its own costs.

SO ORDERED this 28th day of april, 1992.

H. Franklin Waters
United States District Judge

U: S: DISTRICT COURT,
WESTERN DIST. ARKANSAS
F I L E D

MAY  1 1992
CHRIS R. JOHNSON, Clerk
By _____
Deputy Clerk

COB/36/111

4

Appellate Case: 15-1919   Page: 12   Date Filed: 06/25/2015 Entry ID: 4288614


A.C.A § 6-18-206

ARKANSAS CODE OF 1987 ANNOTATED
Copyright (c) 1987-1991 by The State of Arkansas, All rights reserved.
TITLE 6. EDUCATION
SUBTITLE 2. ELEMENTARY AND SECONDARY EDUCATION GENER-
ALLY
CHAPTER 18. STUDENTS
SUBCHAPTER 2. ATTENDANCE

**6-18-206**. Public school choice.

(a) This section may be referred to and cited as the "Arkansas Public School Choice Act of 1989".

(1) The General Assembly hereby finds that the students in Arkansas' public schools and their parents will become more informed about and involved in the public educational system if students and their parents or guardians are provided greater freedom to determine the most effective school for meeting their individual educational needs. There is no "right" school for every student, and permitting students to choose from among different schools with differing assets will increase the likelihood that some marginal students will stay in school and that other, more motivated, students will find their full academic potential.

(2) The General Assembly further finds that giving more options to parents and students with respect to where they attend public school will increase the responsiveness and effectiveness of the state's schools, since teachers, administrators, and school board members will have added incentive to satisfy the educational needs of the students who reside in the district.

(3) The General Assembly therefore finds that these benefits of enhanced quality

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

and effectiveness in our public schools justify permitting a student to apply for admission to a school in any district beyond the one in which he resides, provided that the transfer by this student would not adversely affect the desegregation of either district.

(4) A public school choice program is hereby established to enable any pupil to attend a school in a district in which the pupil does not reside, subject to the restrictions contained in this section.

(b)(1)(A) Before a pupil may attend a school in a nonresident district, the pupil's parent or guardian must submit an application to the nonresident district. This application must be postmarked not later than April 17 of the year in which the pupil would begin the fall semester at the nonresident district.

(B) Within sixty (60) days of the receipt of an application from a nonresident pupil seeking admission under the terms of this section, a participating district shall notify the parent or guardian and the resident district in writing as to whether the pupil's application has been accepted or rejected. If the application is rejected, the nonresident district must state in the notification letter the reason for rejection.

(2) The school board of any participating district must adopt, by resolution, specific standards for acceptance and rejection of applications. Standards may include the capacity of a program, class, grade level, or school building. Nothing in this section requires a school district to add teachers or classrooms or to in any way exceed the requirements and standards established by existing law. Standards may not include an applicant's previous academic achievement, athletic, or other extracurricular ability, handicapping conditions, English proficiency level, or previous disciplinary proceedings.

(3) A school board may, by resolution, determine that it will not admit any nonresident pupils to its schools pursuant to this section.

(c) The responsibility for transportation for a student from his resident school district to a nonresident school district shall be borne, generally, by the student. The resident district may transport the student to the district boundary or to a point agreeable to the parent or the nonresident district within either the resident or nonresident district and count that student in the resident district's calculation for

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

transportation funding. The nonresident district may provide transportation from the resident district's boundary or from a point agreeable with the parent or the resident district within either the resident or nonresident district to a school in the nonresident district and count that student in the nonresident district's calculation for transportation funding.

(d)(1) A nonresident district shall accept credits toward graduation that were awarded by another district.

(2) The nonresident district shall award a diploma to a nonresident pupil if the pupil meets the nonresident district's graduation requirements.

(e) A student who transfers to a nonresident district shall not be eligible for interscholastic athletic competition for a period of one (1) year from the date of the beginning of the transfer.

(f) For purposes of determining a school district's minimum foundation program aid, the nonresident student shall be counted as a part of the average daily membership of the district to which the student has transferred. All add-on weights generated by the student shall also be transferred to the district of attendance.

(g) The provisions of this section and all pupil choice options created hereby are subject to the following limitations:

(1) No student may transfer to a nonresident district where the percentage of enrollment for the student's race exceeds that percentage in his resident district except in the circumstances set forth in subdivision (2) of this subsection.

(2) A transfer to a district is exempt from the restriction set forth above if all districts within a county have voted to participate in choice, and the transfer is between two (2) districts within a county and if the black and white percentages of school enrollment in both the sending and receiving district remains within an acceptable range of the county's overall black and white percentages of school population as set forth by the Department of Education.

(3) The Department of Education shall, by the filing deadline each year, compute the black and white percentages of each county's public school population from the October Annual School Report and shall then compute the acceptable range of variance from those percentages for school districts within each county. In estab-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

lishing the acceptable range of variance the department is directed to use the reme-
dial guideline established in Little Rock School District v. Pulaski County Special
School District of allowing an overrepresentation or underrepresentation of black or
white students of one fourth (1/4th) or twenty-five percent (25%) of the county's
racial balance.

(4) A transfer is exempt from the restriction set forth in subdivision (1) of this
subsection if each school district within the county does not have a critical mass of
minority students of more than ten percent (10%) of any single race.

(5) In any instance where the foregoing provisions would result in a conflict with a
desegregation court order or a district's court-approved desegregation plan, the terms
of the order or plan shall govern.

(6) The Department of Education is authorized to adopt appropriate rules and
regulations to implement the provisions of this section.

(7) The Department of Education shall monitor the effect of the choice transfers
upon the racial balances of the school district and evaluate their effectiveness in
promoting quality desegregated education.

(h) The State Board of Education shall be authorized to resolve disputes arising
under subsections (c)— (g) of this section.

(i) A district participating under this program shall cause public announcements to
be made over the broadcast media and in the print media at such times and in such
manner as to inform parents or guardians of pupils in adjoining districts of the
availability of the program, the application deadline and the requirements and pro-
cedure for nonresident pupils to participate in the program.

(j)(1) All school districts shall report to the Equity Assistance Center of the De-
partment of Education on an annual basis the race, gender, and other pertinent in-
formation needed to properly monitor compliance with the provisions of this sec-
tion.

(2) Such reports may be on such forms as prescribed by the department.

(3) A copy of the report shall be provided to the Joint Interim Oversight Sub-
committee on Educational Reform of the Joint Interim Committee on Education of
the Arkansas General Assembly.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

**History.** Acts 1989, No. 609, §§ 1-13; 1991, No. 214, § 1; 1991, No. 284, §§ 1-3.

## HISTORICAL NOTES

**A.C.R.C. Notes.** Former subsection (c) is deemed to be superseded by the current subsection enacted by Acts 1991, No. 214.

**Publisher's Notes.** Former section, concerning attendance contracts between school districts, was repealed by Acts 1987, No. 762, § 6. The section was derived from Acts 1959, No. 275, §§ 1, 2; A.S.A. 1947, §§ 80-1518.1, 80-1518.2.

**Amendments.** The 1991 amendment by No. 284, in (b)(1)(A), substituted "April 17" for "February 1"; in (b)(1)(B), in the second sentence, substituted "If the application" for "If an application" and substituted "reason" for "reasons"; rewrote (g); and added (i) and (j).

A. C. A. § 6-18-206
AR ST § 6-18-206

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.