No. 15-1919

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

_____

W.T. DAVIS, INDIVIDUALLY AND ON BEHALF
OF A CLASS OF TAXPAYERS OF GARLAND
COUNTY, ARKANSAS,
SIMILARLY SITUATED, AND; GARLAND COUNTY
CHAPTER OF THE N.A.A.C.P.                    PLAINTIFFS - APPELLEES

V.

HOT SPRINGS SCHOOL DISTRICT;
ARKANSAS, STATE OF;
ARKANSAS STATE BOARD OF EDUCATION        DEFENDANTS - APPELLEES

CUTTER MORNING STAR SCHOOL DISTRICT;
FOUNTAIN LAKE SCHOOL DISTRICT;
JESSIEVILLE SCHOOL DISTRICT;
LAKE HAMILTON SCHOOL DISTRICT;
LAKESIDE SCHOOL DISTRICT;
MOUNTAIN PINE SCHOOL DISTRICT            DEFENDANTS - APPELLANTS

_____

### REPLY BRIEF OF APPELLANTS

_____

Jess Askew III, Ark. Bar No. 86005          D. Scott Hickam
Jess.Askew@kutakrock.com                    D. Scott Hickam, P.A.
Ashley W. Hudson, Ark. Bar 2007136          211 Hobson Avenue, Suite C
Ashley.Hudson@kutakrock.com                 Hot Springs, AR 72913
Luke K. Burton, Ark. Bar No. 2013223        dscotthickam@sbcglobal.net
Luke.Burton@kutakrock.com
KUTAK ROCK LLP
124 West Capitol Avenue, Suite 2000         *Attorneys for Appellants Cutter Morning Star School*
Little Rock, Arkansas 72201                 *District, Fountain Lake School District, Jessieville*
Telephone: (501) 975-3000                   *School District, Lake Hamilton School District, Lakeside*
Facsimile: (501) 975-3001                   *School District and Mountain Pine School District*

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

This school-desegregation case involves a district court's resolution of a Rule 60(b)(5) motion based on a significant change in law. The district court erroneously required evidence of past compliance with a Settlement Agreement that incorporates an outdated, unconstitutional law. In requiring such evidence, the district court erred in failing to apply the different standard that this Court recently found applicable under these circumstances. If the district court had applied the correct standard for termination under Rule 60(b)(5), it would have determined that continued application of a law found to violate the Equal Protection Clause is no longer equitable.

This case raises serious, straight-forward issues of a constitutional magnitude. Appellants respectfully request 15 minutes of oral argument per side.

i

# TABLE OF CONTENTS

SUMMARY OF THE CASE AND REQUEST FOR
    ORAL ARGUMENT ............................................................................. i

TABLE OF CONTENTS ........................................................................... ii

TABLE OF AUTHORITIES .................................................................... iii

ARGUMENT ............................................................................................ 1

    I.    Standard of Review ................................................................. 1

    II.   The District Court Applied the Wrong Legal Standard
         for Deciding this Rule 60(b)(5) Motion ................................. 1

    III.  Changes in the Law Require Relief from the Settlement
         Agreement and Consent Decree ............................................ 6

CONCLUSION ....................................................................................... 13

CERTIFICATE OF COMPLIANCE ...................................................... 15

CERTIFICATE OF SERVICE ............................................................... 16

Appellate Case: 15-1919    Page: 3    Date Filed: 09/16/2015 Entry ID: 4317011

# TABLE OF AUTHORITIES

## CASES

*Adarand Constructors, Inc. v. Pena*,
515 U.S. 200 (1995) ..................................................................... 10, 11

*Agostini v. Felton*,
521 U.S. 203 (1997) ...........................................................................1, 6

*Alexander v. Britt*,
89 F.3d 194 (4th Cir. 1996) .................................................................4

*Ass'n for Retarded Citizens of N.D. v. Sinner*,
942 F.2d 1235 (8th Cir. 1991) ...........................................................4

*Bd. of Educ. of Okla. City Pub. Sch., Indep. Sch. Dist. No. 89,
Okla. Cnty., Okla. v. Dowell*,
498 U.S. 237 (1991) ............................................................................4

*Burns v. Alcala*,
420 U.S. 575 (1975) ............................................................................5

*City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*,
702 F.3d 1147 (8th Cir. 2013) ...........................................................6

*Coca-Cola Co. v. M.R.S. Distribs. Inc.*,
224 F. App'x 646 (9th Cir. 2007) .......................................................4

*Edgerson on Behalf of Edgerson v. Clinton*,
86 F.3d 833 (8th Cir. 1996) ...........................................................7, 10

*Freeman v. Pitts*,
503 U.S. 467 (1992) .................................................................. passim

*Frew v. Janek*,
780 F.3d 320 (5th Cir. 2015) ..............................................................1

*Harvey v. Johanns*,
494 F.3d 237 (1st Cir. 2007) .............................................................11

Appellate Case: 15-1919    Page: 4    Date Filed: 09/16/2015 Entry ID: 4317011

*Hills v. Gautreaux,*
425 U.S. 284 (1976) ...........................................................................7

*Horne v. Flores,*
557 U.S. 433 (2009) ...........................................................................2

*Hunter v. Underwood,*
362 F.3d 468 (8th Cir. 2004) .............................................................1

*Inmates of Suffolk Co. Jail v. Rouse,*
129 F.3d 649 (1st Cir. 1997) ...........................................................11

*Jenkins by Agyei v. State of Mo.,*
807 F.2d 657 (8th Cir. 1986) ................................................. 7, 9, 10

*Lee v. Lee Cnty. Bd. of Educ.,*
639 F.2d 1243 (5th Cir. 1981) .........................................................10

*Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1,*
921 F.2d 1371 (8th Cir. 1990) ...........................................................6

*Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1,*
778 F.2d 404 (8th Cir. 1985) .............................................................7

*Milliken v. Bradley,*
418 U.S. 717 (1974) ...........................................................................9

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1,*
551 U.S. 701 (2007) ................................................................. passim

*Protectoseal Co. v. Barancik,*
23 F.3d 1184 (7th Cir. 1994) .........................................................4, 5

*Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.,*
413 F.3d 897 (8th Cir. 2005) .............................................................1

*Railway Employees v. Wright,*
364 U.S. 642 (1961) ...........................................................................6

*Rufo v. Inmates of Suffolk Cnty. Jail,*
502 U.S. 367 (1992) ................................................................. passim

iv

*Shakman v. City of Chi.*,
   426 F.3d 925 (7th Cir. 2005) .................................................................4

*Smith v. Bd. of Educ. of Palestine-Wheatley Sch. Dist.*,
   769 F.3d 566 (8th Cir. 2014) ............................................... 1, 2, 3, 6

*Stevenson v. Blytheville Sch. Dist. #5*,
   No. 14–3746, 2015 WL 5090672 (8th Cir. Aug. 31, 2015) ..................11

*Teague ex rel. T.T. v. Ark. Bd. of Educ.*,
   873 F. Supp. 2d 1055 (W.D. Ark. 2012) ............................................11

*Teague v. Cooper*,
   720 F.3d 973 (8th Cir. 2013) ............................................................11

*Theriault v. Smith*,
   523 F.2d 601 (1st Cir. 1975) ...............................................................5

*U.S. v. Swift & Co.*
   286 U.S. 106 (1932) ............................................................................5

## STATUTES

45 CFR § 80.7(c) (2006) ...........................................................................8

Fed.R.Civ.P. 60(b)(5).................................................................... passim

v

# ARGUMENT

I.   *Standard of Review.*

Plaintiffs and the Hot Springs School District (collectively, HSSD) hint that the appropriate standard of review is abuse of discretion. *See* HSSD Resp. at 32. However, this Court reviews de novo the district court's application of the correct legal standard and other questions of law. *Smith v. Bd. of Educ. of Palestine-Wheatley Sch. Dist.*, 769 F.3d 566, 568 (8th Cir. 2014); *Hunter v. Underwood*, 362 F.3d 468, 474 (8th Cir. 2004); *see also Frew v. Janek*, 780 F.3d 320, 326 (5th Cir. 2015). A court abuses its discretion when it relies upon an erroneous legal principle. *Agostini v. Felton*, 521 U.S. 203, 238 (1997) (involving denial of a Rule 60(b)(5) motion). "[A] district court by definition abuses its discretion when it makes an error of law." *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 903 (8th Cir. 2005) (involving grant of a Rule 60(b)(5) motion).

II.  *The District Court Applied the Wrong Legal Standard for Deciding this Rule 60(b)(5) Motion.*

Like the district court, HSSD contends that the six moving school districts (the "Districts") must show full compliance with the consent decree incorporating the Garland County School Desegregation Settlement Agreement ("Settlement Agreement") before the decree may be terminated. HSSD Resp. at 7–8. Both

1

HSSD and the district court incorrectly cite *Smith's* articulation of the *Freeman*[1] standard. *See id.* at 7–8; Joint Appendix (J.A.) 308. Although *Smith articulated* the *Freeman* standard, *Smith* explicitly rejected *applying Freeman* to a Rule 60(b)(5) motion. *Smith*, 769 F.3d at 572. The *Smith* Court instead applied the *Rufo*[2] standard, which the district court should have done here.

Smith recognizes the different approaches to modifying or terminating a consent decree. One is to demonstrate full compliance and unitary status. *See id. Freeman* would apply in this situation. *Id.* at 571–72. Another approach is to demonstrate that changed factual conditions make prospective application inequitable. This approach was taken in *Smith*, where this Court applied the *Rufo* standard. *Id.* at 572. The third approach is to demonstrate that changed legal conditions make prospective application inequitable. *Rufo* governs in this situation too. *See Horne v. Flores*, 557 U.S. 433, 447 (2009) (citing *Rufo*, 502 U.S. at 384). Despite these different approaches, HSSD tries to force the Districts onto the full-compliance track by mischaracterizing the Districts' motion. As explained below and in the Districts' opening brief, the Districts ***do not*** seek a unitary-status/full-compliance declaration; the Districts seek Rule 60(b)(5) relief based on changes in law.

---

[1] *Freeman v. Pitts*, 503 U.S. 467 (1992).

[2] *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367 (1992).

Appellate Case: 15-1919     Page: 8     Date Filed: 09/16/2015 Entry ID: 4317011

HSSD erroneously states that *Smith* "emphasized that, '[w]ithout even citing *Rufo*, the [Supreme] Court' held that a federal court confronted with a motion to terminate 'should address whether the vestiges of past discrimination had been eliminated to the extent practicable.'" HSSD Resp. at 13. *Smith* actually stated that, when a district seeks to show full compliance, the court should address "whether the vestiges of past discrimination had been eliminated to the extent practicable" in considering a district's good faith. *Smith*, 769 F.3d at 571. *Smith never* held or even suggested that *Freeman* applies in the Rule 60(b)(5) context; to the contrary, it held that *Rufo* applies.

HSSD contends that the Districts' pursuit of termination—rather than modification—distinguishes this case from *Smith*. HSSD Resp. at 12–13. HSSD quotes the following from *Smith*: "The Wheatley plaintiffs' proposed legal standard ignores the significant differences between a petition to modify a consent decree on account of changed circumstances, and a petition to terminate all or part of a consent decree because the party subject to the decree has fully complied with its obligations," and then erroneously asserts that *Freeman* applies in termination cases.

However, *Smith* recognized merely that full compliance with a consent decree's obligations is *sufficient* for termination. Nowhere did *Smith* hold or suggest that full compliance with a consent decree's obligations is *necessary* for

3

termination. In other words, full compliance is one approach to termination—not the only approach.

In fact, this Court has previously explained that "a district court retains authority under Rule 60(b)(5) to modify *or terminate* a continuing, permanent injunction if the injunction has become illegal or changed circumstances have caused it to operate unjustly." *Ass'n for Retarded Citizens of N.D. v. Sinner*, 942 F.2d 1235, 1239 (8th Cir. 1991) (emphasis added). Furthermore, other circuits have determined that application of *Rufo* and Rule 60(b)(5) principles does not depend on whether the movant seeks modification or termination. *See Coca-Cola Co. v. M.R.S. Distribs. Inc.*, 224 F. App'x 646, 646–47 (9th Cir. 2007) (remanding to district court for failure to analyze motion to vacate injunction under *Rufo*); *Shakman v. City of Chi.*, 426 F.3d 925, 928–36 (7th Cir. 2005) (reversing denial of motion to vacate consent decree based on change in law where district court did not consider institutional-reform nature of the litigation); *Alexander v. Britt*, 89 F.3d 194, 198–99 (4th Cir. 1996) (comparing *Rufo* with *Dowell*,[3] which provides a similar iteration of the *Freeman* standard); *Protectoseal Co. v. Barancik*, 23 F.3d 1184, 1187 (7th Cir. 1994) (terminating injunction using *Rufo* standard based on change in law). In a similar case, the First Circuit explained:

---

[3] *Bd. of Educ. of Okla. City Pub. Sch., Indep. Sch. Dist. No. 89, Okla. Cnty., Okla. v. Dowell*, 498 U.S. 237 (1991).

Appellate Case: 15-1919     Page: 10     Date Filed: 09/16/2015 Entry ID: 4317011

> We believe that the district court acted properly, in accordance Fed.R.Civ.P. 60(b)(5), in ***vacating*** the consent decree in this case. The Supreme Court's decision in *Burns v. Alcala*, 420 U.S. 575 . . . (1975), construing 42 U.S.C. s 606(a), represented a fundamental change in the legal predicates of the consent decree. This is arguably the kind of situation in which relief should be available under Rule 60(b)(5). Defendant sought prospective relief only, and he did so only as a result of an important decision of the Supreme Court. It may well be unreasonable to require defendant, for the indefinite future, to abide by a consent decree based upon an interpretation of law that has been rendered incorrect by a subsequent Supreme Court decision. As Mr. Justice Cardozo stated in the leading case of *United States v. Swift & Co.*: "A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need."

*Theriault v. Smith*, 523 F.2d 601, 601–02 (1st Cir. 1975) (emphasis added) (citations and footnotes omitted). The district court erred by rejecting the *Rufo*/Rule 60(b)(5) framework merely because the Districts requested termination.

HSSD also tries to derive significance from the Districts' attempt to terminate a consent decree rather than an injunction. *See* HSSD Resp. at 14 (attempting to distinguish *Protectoseal* because it involved an injunction rather than consent decree) and 30–32 (contending that the Court should be less willing to terminate the Settlement Agreement because of its nature as a contract). However, the Supreme Court has also rejected this argument:

Appellate Case: 15-1919   Page: 11   Date Filed: 09/16/2015 Entry ID: 4317011

There is no suggestion in these cases that a consent decree is not subject to Rule 60(b). A consent decree no doubt embodies an agreement of the parties and thus in some respects is contractual in nature. But it is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees. *Railway Employees v. Wright,* 364 U.S. 642, 650–651 . . . (1961).

*Rufo v. Inmates of Suffolk Cnty. Jail,* 502 U.S. 367, 378 (1992); *see also Agostini,* 521 U.S. at 215 (noting that Rule 60(b)(5) applies to injunction or consent decree); *Smith,* 769 F.3d at 568 (applying *Rufo* to modification of consent decree); *City of Duluth v. Fond du Lac Band of Lake Superior Chippewa,* 702 F.3d 1147, 1152 (8th Cir. 2013) (applying *Rufo* to dissolution of consent decree without heightened contract standard). Thus, under *Rufo,* the same standard governs termination of consent decrees and injunctions under Rule 60(b)(5).[4]

III. *Changes in the Law Require Relief from the Settlement Agreement and Consent Decree.*

HSSD disputes that changes in law render prospective application of this decree inequitable. *See* HSSD Resp. at 15. HSSD argues that *Parents Involved* is inapplicable because "no one questions that the obligation to disestablish a school system segregated by law can include race-conscious remedies." *Id.* at 9 (citing *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1,* 551 U.S. 701, 737

---

[4] HSSD's primary support for its erroneous argument did not involve or contemplate a Rule 60 motion. *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1,* 921 F.2d 1371 (8th Cir. 1990).

6

(2007)). The observation is irrelevant given that the district court never found that the Garland County schools were unlawfully segregated.[5]

"Before a court may impose an interdistrict desegregation remedy, it must find an interdistrict constitutional violation." *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 778 F.2d 404, 410 (8th Cir. 1985) (en banc); *see also Edgerson on Behalf of Edgerson v. Clinton*, 86 F.3d 833, 837 (8th Cir. 1996). A finding of a constitutional violation is therefore a "necessary predicate" before a constitutional remedy may be imposed. *Jenkins by Agyei v. State of Mo.*, 807 F.2d 657, 672 (8th Cir. 1986) (en banc) (quoting *Hills v. Gautreaux*, 425 U.S. 284 (1976)).

Where is the finding of a constitutional violation here? How can the scope of a constitutional remedy be ascertained? HSSD cannot identify a finding of a constitutional violation because the record contains none. HSSD glosses over this deficiency by explaining that Plaintiffs believed and were prepared to prove

_____

[5] HSSD wants to have its cake and eat it too. HSSD argues that "[t]he reality the Appellants ignore is that the segments of *Parents Involved* that they find so telling focused on voluntary policy decisions. That is a fatal mistake, since that is not this case." HSSD Resp. at 8. HSSD then acknowledges irreconcilably that "Appellants voluntarily agreed to the Settlement Agreement." *Id.* at 24. There is no judicial determination of either constitutional violation or remedy.

Additionally, HSSD acknowledges that it has maintained throughout the litigation that it is fully integrated. HSSD Resp. at 2. Nonetheless, HSSD seeks a prospective constitutional remedy of student assignment based on race. How can a fully integrated district pursue such a remedy?

7

unlawful segregation. HSSD Resp. at 1. Regardless, the district court never found it.

HSSD argues that the Garland County districts would not have settled unless they had operated dual school systems. *See* HSSD Resp. at 24. Thus, "they should have pressed to have their day in court" rather than settle. *Id.* But it does not follow that defendants who settle necessarily admit wrongdoing; litigants settle claims for a variety of reasons. On the record here the Districts did not admit interdistrict segregation. And the district court never found any.

The Supreme Court confronted a similar argument in *Parents Involved*. The Court, and HSSD here, acknowledged that the Seattle district in question had never operated segregated schools or been subject to court-ordered desegregation. *Parents Involved*, 551 U.S. at 712; HSSD Resp. at 19. The Supreme Court stated:

> Justice BREYER makes much of the fact that in 1978 Seattle "settled" an NAACP complaint alleging illegal segregation with the federal Office for Civil Rights (OCR). See *post,* at 2802, 2804, 2809–2810, 2812. The memorandum of agreement between Seattle and OCR, of course, contains no admission by Seattle that such segregation ever existed or was ongoing at the time of the agreement, and simply reflects a "desire to avoid the incovenience [*sic* ] and expense of a formal OCR investigation," which OCR was obligated under law to initiate upon the filing of such a complaint. Memorandum of Agreement between Seattle School District No. 1 of King County, Washington, and the OCR, U.S. Dept. of Health, Education, and Welfare 2 (June 9, 1978); see also 45 CFR § 80.7(c) (2006).

*Parents Involved*, 551 U.S. at 736 n.15. Similarly, the Garland County districts "desire[d] to avoid expensive, divisive and protracted litigation in this matter,"

8

settling allegations of illegal segregation in an agreement that contained no admission of unlawful behavior.[6] J.A. 173.

Attempting to show current illegal discrimination, HSSD asserts that "the racial composition of the Garland County schools remains today almost exactly as it was when the Settlement Agreement was entered in 1991. The six 'predominantly white' districts at the time the Settlement Agreement was approved—the Appellants here—remain 'predominantly white.'" HSSD Resp. at 32–33. In other words, HSSD relies on the racial composition of the Garland County districts as proof of illegal interdistrict segregation.

This Court and the Supreme Court have rejected this approach. Chief Justice Roberts stated in *Parents Involved*: "The distinction between segregation by state action and racial imbalance caused by other factors has been central to our jurisprudence in this area for generations," 551 U.S. at 736, and "[w]here resegregation is a product not of state action but of private choices, it does not have constitutional implications." *Id.* (citing *Freeman*, 503 U.S. at 495–96). This Court in *Jenkins* observed that "*Milliken* refused to sanction a presumption that

---

[6] HSSD makes much of Judge Hendren's comment more than 20 years after execution of the Settlement Agreement that the Settlement Agreement was designed to remedy the vestiges of prior de jure segregation in the Garland County districts. HSSD Resp. at 27 (citing J.A. 210). However, Judge Hendren made this comment without any factual basis during an uncontested portion of the proceedings. This isolated, unsupported, "brief comment" does not reflect any admission or finding of wrongdoing. *See Milliken v. Bradley*, 418 U.S. 717, 748 (1974).

9

significant disparities in the racial composition of autonomous school districts resulted from impermissible action by those districts and thus justified imposing upon them the burden of remedying conditions of segregation existing in other districts." 807 F.2d at 670 (quoting *Lee v. Lee Cnty. Bd. of Educ.*, 639 F.2d 1243, 1254 (5th Cir. 1981)). This Court has restated this principle: "Unlike cases involving segregation within a single school district, there is no presumption that racial imbalances among separate, independent school districts were caused by intentional discrimination." *Edgerson*, 86 F.3d at 837.

Finally, the Court should reject HSSD's argument that *Parents Involved* did not constitute a substantial legal change justifying Rule 60(b)(5) relief. Although *Parents Involved* relied on certain "well established" equal-protection principles, *see* HSSD Resp. at 16, the Court had never applied these principles in the context of race-conscious K–12 student assignment outside the requirements of a judicial remedy for prior segregation. Furthermore, both *Parents Involved* and HSSD recognize that *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995), which was decided after execution of the Settlement Agreement and was the basis for *Parents Involved's* application of strict scrutiny, was a fundamental change in law. *Parents Involved*, 551 U.S. at 739 n.16 and 741; HSSD Resp. at 18 n.3. No reasonable dispute exists that *Parents Involved* and *Adarand* constitute fundamental legal changes.

Appellate Case: 15-1919    Page: 16    Date Filed: 09/16/2015 Entry ID: 4317011

Another fundamental change in law is *Teague*, wherein Judge Dawson struck down the 1989 Act, which includes the race-conscious student-transfer mechanism adopted into the Settlement Agreement. *Teague ex rel. T.T. v. Ark. Bd. of Educ.*, 873 F. Supp. 2d 1055, 1068 (W.D. Ark. 2012). Although this Court subsequently vacated Judge Dawson's opinion because of mootness, *Teague v. Cooper*, 720 F.3d 973 (8th Cir. 2013), its logic is unfading. It is difficult to imagine any court rejecting a constitutional challenge to the 1989 Act and its focus on race.

Perhaps more importantly, the Arkansas General Assembly repealed and replaced the 1989 Act,[7] which constitutes a significant change in law in and of itself. *See, e.g.*, *Harvey v. Johanns*, 494 F.3d 237, 241 (1st Cir. 2007); *Inmates of Suffolk Co. Jail v. Rouse*, 129 F.3d 649, 656 (1st Cir. 1997) (explaining that "a forward-looking judgment in equity can succumb to legislative action if the legislature alters the underlying rule of law"). HSSD never challenges this point in its response. Not only are *Parents Involved*, *Adarand*, *Teague*, and the 1989 Act's repeal and replacement sufficient legal changes on their own, they are overwhelming legal changes when considered in combination.

---

[7] The Arkansas General Assembly repealed and replaced the 1989 Act by adopting the 2013 Act. After HSSD submitted its Response, this Court decided a case interpreting the exemption provisions of the 2013 Act. *See Stevenson v. Blytheville Sch. Dist. #5*, No. 14–3746, 2015 WL 5090672 (8th Cir. Aug. 31, 2015). *Stevenson* has no bearing on the present appeal, as it did not involve the 1989 Act or any other issues present here.

11

HSSD also attempts to exploit the Districts' 2013 Petition for Declaratory Relief wherein the parties sought continued application of the Settlement Agreement. *See* HSSD Resp. at 6. However, as explained in the Districts' opening brief, the Districts sought clarity of the law during an emergency that required a quick answer—one that could not be given timely if the Districts sought Rule 60(b)(5) relief. Districts' Br. at 4. Furthermore, the Districts currently seek *prospective* relief. If a court locked parties into positions taken earlier in litigation, then a party could *never* obtain Rule 60(b)(5) relief from a consent decree. Rule 60(b)(5)'s underlying principle is that positions and situations change.

The episode that awoke the Districts to the inequity of the Settlement Agreement was the injustice that befell the Walker children, who were denied transfer solely because they are black. The Settlement Agreement requires this inequitable treatment. HSSD tries to downplay the Walker injustice by arguing that they could have pursued other transfer options. HSSD Resp. at 35. But the Walkers were denied *this* transfer because they are black and because the Settlement Agreement made that fact dispositive. HSSD also admits that the Walker children are not the only children who have been denied transfer because of race. *See* HSSD Resp. at 33 (noting that "[p]eriodic invocation of [the 1989 Act's race provision] may have stemmed the tide of segregative transfers"). Finally, regardless of whether the state provides a benefit "as a matter of legislative grace" or

12

"constitutional obligation," HSSD Resp. 39, it is beyond dispute that the state or other governmental actor cannot disburse that benefit on the basis of race.

## CONCLUSION

Justice Kennedy's remarks in *Parents Involved* reverberate loudly here:

> Reduction of an individual to an assigned racial identity for differential treatment is among the most pernicious actions our government can undertake. The allocation of governmental burdens and benefits, contentious under any circumstances, is even more divisive when allocations are made on the basis of individual racial classifications.
>
> . . .
>
> To be forced to live under a state-mandated racial label is inconsistent with the dignity of individuals in our society. And it is a label that an individual is powerless to change.

*Parents Involved*, 551 U.S. at 795, 797 (Kennedy, J., concurring in part and concurring in judgment). It is time to end the government-created racial labeling and court-sponsored de jure segregation operating in Garland County.

The Districts respectfully request that this Court reverse the district court's Order denying the Districts' Rule 60(b)(5) motion and remand with instructions that the district court terminate the Settlement Agreement and the Order that adopted it.

13

Respectfully submitted,

KUTAK ROCK LLP
124 West Capitol Avenue, Suite 2000
Little Rock, Arkansas 72201
Telephone: (501) 975-3000
Facsimile: (501) 975-3001

By:     */s/ Jess Askew III*
        Jess Askew III, Ark. Bar No. 86005
        Jess.Askew@kutakrock.com
        Ashley W. Hudson, Ark. Bar 2007136
        Ashley.Hudson@kutakrock.com
        Luke K. Burton, Ark. Bar No. 2013223
        Luke.Burton@kutakrock.com

        AND

        D. Scott Hickam
        D. Scott Hickam, P.A.
        211 Hobson Avenue, Suite C
        Hot Springs, AR 72913
        dscotthickam@sbcglobal.net

*Attorneys for Appellants Cutter Morning Star
School District, Fountain Lake School District,
Jessieville School District, Lake Hamilton School
District, Lakeside School District and Mountain
Pine School District*

14

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the type and volume limitations of Rule 32(a)(7)(B). It contains 3,587 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). Pursuant to Eighth Cir. R. 28A(h), the electronic version of the brief is in PDF format, and was generated by printing to Adobe PDF from the original word processing file. The brief and addendum have been scanned for viruses and are virus-free.

*/s/ Jess Askew III*
Jess Askew III

Appellate Case: 15-1919    Page: 21    Date Filed: 09/16/2015 Entry ID: 4317011

## CERTIFICATE OF SERVICE

I do hereby certify that on September 15, 2015, I have served a true and correct paper copy of the Reply Brief of Appellants, by first-class U.S. Mail, postage prepaid, to counsel for each separately-represented party through their counsel of record as follows:

Q. Byrum Hurst , Jr.
Justin Byrum Hurst
HURST LAW GROUP
518 Ouachita Avenue
Hot Springs, AR 71901-1197

Allen P. Roberts
Attorney at Law
P.O. Box 280
Camden, AR 71701

Whitney F. Moore
FUQUA CAMPBELL P.A.
Riviera Tower
3700 Cantrell Road, Suite 205
Little Rock, AR 72202

Rosalyn Middleton
Arkansas Attorney General
323 Center, Suite 200
Little Rock, AR 72201

Jeremy C. Lasiter
General Counsel
Arkansas Department of Education
Four Capitol Mall, Room 404A
Little Rock, AR 72201

D. Scott Hickam
D. SCOTT HICKAM, P.A.
211 Hobson Avenue, Suite C
Hot Springs, AR 71913

*/s/ Jess Askew III*
Jess Askew III

16